# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CANADA A.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-348**    (Fam. Ct. Kanawha Cnty. Case No. FC-20-2020-D-297)

**MICHAEL K.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Canada A.[1] ("Mother") appeals the Family Court of Kanawha County's July 30, 2025, Final Order for Modification of Parenting Plan. Respondent Michael K. ("Father") filed a response in support of the court's order.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties were never married and are the parents of one child, S.K., born in 2019. On December 15, 2020, the Family Court of Kanawha County entered a Final Order of Paternity Adjudication and Parenting Time Allocation ("2020 Order") that set forth the original parenting plan. The 2020 Order designated Mother as the residential parent and granted Father parenting time every other week from Wednesday at noon to Thursday at noon (the next day), to be exercised entirely at his sister's residence. Father was ordered to provide transportation for all parenting time exchanges, and both parents would have unmonitored telephone contact with the child at reasonable times and intervals during the other parent's parenting time. Both parties were ordered to refrain from consuming alcohol around the child and not to permit third parties to do so. Father was also ordered to pay Mother $251.88 per month in child support, effective December 1, 2020.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Anna L. Adkins, Esq. Father is represented by Claude Smith III, Esq.

On March 20, 2025, Father filed a Petition for Contempt, alleging that Mother was in violation of the 2020 Order because she had denied Father contact or parenting time with S.K. since February 2022 and that she was willful and contumacious in her attempt to destroy Father's relationship with S.K. At the same time, Father filed a Petition to Modify Parenting Plan and Child Support, wherein he alleged a substantial change in circumstances and sought additional parenting time and to recalculate child support. On March 31, 2025, the family court issued a Rule to Show Cause on Father's petition for contempt and set a hearing for the same.

Mother filed her Answer to Father's petition for modification and a counterpetition for modification of child custody on April 23, 2025. She alleged that a substantial change of circumstances occurred since the entry of the 2020 Order, in that Father failed to have any contact with S.K. or exercise his parenting time since February 16, 2022, and had shown no desire to be involved in S.K.'s life. Mother alleged that Father was unable to maintain a stable home, was drifting between the homes of family and friends, was criminally charged with possession of a controlled substance on August 16, 2022, and had intentionally avoided and refused involvement in S.K.'s life for the past three years. She further contended that Father was unwilling and unable to perform caretaking functions as required by West Virginia Code § 48-1-210 (2001). Accordingly, Mother asserted that renewing contact with Father would be psychologically harmful to S.K. and sought to terminate his parenting time as ordered in the 2020 Order.

Additionally, Mother sought court approval to relocate with S.K. to Moundsville, Marshall County, West Virginia, asserting that the relocation was contemplated prior to Father filing his petition for modification. Mother conveyed that her husband had already relocated for a new job. Meanwhile, Mother planned to pursue a master's degree at a college in nearby Pittsburgh, Pennsylvania, and had already secured admission for S.K. to start kindergarten in August at a parochial school subject to tuition coverage under the Hope Scholarship. Mother posited that the relocation to Moundsville would not prejudice Father because he had no relationship with S.K. and had presumptively abandoned her as defined under West Virginia Code § 48-22-306 (2001).

On May 6, 2025, Mother filed her answer to Father's contempt petition, asserting the same arguments regarding Father's intentional refusal to be involved in S.K.'s life since February 16, 2022. On May 7, 2025, the family court conducted a hearing on Father's petitions and Mother's counterpetition to modify. The parties appeared in person and by counsel. The court memorialized its findings in its May 23, 2025, order titled, "Order From Hearing Held May 7, 2025," which included a finding that Father's allegation he had been prevented from exercising his parenting time was belied by his testimony that he was using drugs and having difficulty in meeting his daily responsibilities. Father claimed that although his issues were self-induced, he did not want S.K. to suffer from his poor choices, see him while he was under the influence of drugs, or be around him when he did not have an adequate home. Father also testified that he lapsed paying child support in 2022, but

2

that he was working three jobs to catch up and turn his life around. The parties agreed that Father brought his child support payments current in 2023 and remained current since then.

Mother alleged that Father stopped asking to see S.K. in 2022 when he was on drugs and that this conduct constituted abandonment. The court acknowledged that a failure to support and to exercise parenting time would be considered abandonment under West Virginia Code § 48-22-306 if there were an adoption proceeding pending, but because no adoption petition had been filed, the court found the issue of abandonment was not properly raised in the instant case.

The family court went on to find that, although Father's testimony and the proffers of counsel were plausible, Father did not meet his burden on his petition for contempt and dismissed that motion. As to Father's petition to modify custody, the family court decided it could not grant Father the modifications he requested, but found that Father should have meaningful contact with S.K. pursuant to the requirements of West Virginia Code §§ 48-9-102 and 48-9-102a (2022). Accordingly, the court ordered a modified parenting plan "designed to reacquaint" S.K. and Father. To start, Father and S.K. were to be provided three sessions with a psychologist, to be paid for by Father. After those three sessions, Father would exercise supervised parenting at the YWCA Monitored Visitation and Exchange Center, one session per week for two hours, for a thirty-day period. Thereafter, Father would exercise parenting time every Wednesday for three hours. The court further ordered that after that re-acclimation period, Father would be required to petition the court to expand his parenting time. Father was also awarded telephone/FaceTime contact with S.K. every Monday evening from 7:00 p.m. to 7:15 p.m. The court noted that this temporary parenting plan was subject to modification at the next hearing when Mother's counterpetition for modification would be addressed, and after Father filed a written response.

On May 21, 2025, Father filed his answer to Mother's counterpetition to modify custody. On May 27, 2025, within hours of the hearing set by the court, Father filed another petition for contempt, alleging that Mother refused to obey the court's orders. Specifically, Father alleged that his sister went to Mother's last known address and discovered that she had vacated the premises. His sister purportedly took a photograph of Mother's empty apartment, which Father attached to his motion to submit as evidence that Mother failed to disclose her and S.K.'s current address. Father also alleged that Mother refused to permit S.K. to participate in a telephone/FaceTime call with Father as directed by the May 23, 2025, order, and that her refusal was willful, contumacious, and designed to further alienate Father's relationship with S.K.

On May 27, 2025, the court conducted its hearing on Mother's counterpetition for modification of child custody. In its June 3, 2025, order memorializing that hearing ("June 3 order"), the court noted that Father had filed a contempt petition on the date of the hearing and granted Mother ten days to file a written response. The court found that Mother testified

3

that she, her husband, and her three children, including S.K., desired to relocate to Moundsville.[3] Her husband had already moved and was working in Wheeling while she and the children lived with her family in Elkview. The court found that Mother met her burden of proof with regard to her counterpetition seeking to relocate, finding the relocation to be made in good faith for a legitimate purpose and to be in the best interests of S.K.—that Mother's husband had obtained employment in Wheeling, that she had applied to and been accepted into the master's program in psychology at Carlow University to start in August, and that the children were enrolled in a parochial school in Moundsville starting August 15 with their tuition paid by the Hope Scholarship. Mother was permitted to relocate with S.K. starting July 15 and was allowed to travel there before that date as long as her travel did not interfere with Father's parenting time and counseling sessions.

The court also found that Father should have meaningful contact with S.K., and mostly kept the plan designed to reacquaint Father and S.K., including three counseling sessions with a licensed professional counselor at Peach Valley Counseling Center in South Charleston to be paid for by Father; then one session per week of two hours of supervised parenting for a period of thirty days; and thereafter, that Father should exercise parenting time for a period of three hours every Friday. The court ordered that after the acclimation period, Father would be required to return to court for further hearings if he sought to modify the schedule, but would have unmonitored FaceTime/telephone contact every Monday from 7:00-7:15 p.m. The court ordered the parties to return on July 1, 2025, and if either party sought to modify the June 3 order, they were instructed to file a petition to modify at least ten days prior to July 1, 2025.

On June 2, 2025, Mother filed a verified motion for emergency ex parte temporary relief and a motion for emergency temporary relief, asking the family court to enter an ex parte order suspending Father's contact with S.K. pursuant to West Virginia Code §§ 48-5-512 and -513 (2001). Mother alleged that pursuant to the May 27, 2026, hearing, Mother took S.K. to the initial appointment with the counselor, whereafter the counselor opined that she was deeply concerned about the court's proposed "acclimation schedule," specifically that the sudden imposition of video/phone calls and a mere three counseling sessions would not be sufficient for reunification given that S.K. had no memories of Father and he was essentially a stranger after his years-long absence. Mother attached a June 1, 2025, letter from the counselor as an exhibit to her motion in which the counselor stated her typical reunification therapy practice would be to work with the child and Father individually until she determined it would not be detrimental to S.K. to bring them together. The counselor asked the court and parties to permit her time to work with S.K. before subjecting her to telephone calls with Father.

The court, by order entered June 10, 2025, denied Mother's motion for emergency relief and motion for emergency ex-parte temporary relief, stating that the motions did not

---

[3] Mother and her husband share two children, ages two and four.

4

state sufficient grounds to deviate from the court's prior order per West Virginia Code § 48-5-512,[4] and that if the court granted Mother's motions, then her relocation would be delayed by sixty days or more, and it would violate West Virginia Code §§ 48-9-102 and -102a. The court noted that Mother had not filed a petition to modify the prior order and further reasoned that the letter Mother submitted from the court-ordered counselor "appears to be more of a scheduling problem with the [c]ounselor."

On July 1, 2025, the family court held a final hearing on Father's petition for modification. During the final hearing, the parties announced there were no further issues for the court's consideration that were not previously heard during the May 7 and May 27, 2025, hearings. The court noted Mother's concerns regarding the order of immediate contact between Father and S.K., but held that the modification and acclimation parenting plan were in the best interests of the child and would remain in place. These rulings were memorialized in the family court's July 30, 2025, order, which Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

---

[4] West Virginia Code § 48-5-512 addresses temporary relief during the pendency of a divorce action, and provides:

An ex parte order granting all or part of the relief provided for in this part 5 may be granted without written or oral notice to the adverse party if:
(1)    It appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or such party's attorney can be heard in opposition. The potential injury, loss or damage may be anticipated when the following conditions exist: Provided, That the following list of conditions is not exclusive:
(A)    There is a real and present threat of physical injury to the applicant at the hands or direction of the adverse party;
(B)    The adverse party is preparing to quit the state with a minor child or children of the parties, thus depriving the court of jurisdiction in the matter of child custody;
(C)    The adverse party is preparing to remove property from the state or is preparing to transfer, convey, alienate, encumber or otherwise deal with property which could otherwise be subject to the jurisdiction of the court and subject to judicial order under the provisions of this section or part 5-601, et seq.; and
(2)    The moving party or his or her attorney certifies in writing any effort that has been made to give the notice and the reasons supporting his or her claim that notice should not be required.

5

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders). The Supreme Court of Appeals of West Virginia ("SCAWV") has said "[q]uestions relating to . . . custody of the children are within the sound discretion of the [family] court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt., in part, *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). This emphasis on the discretionary determinations of the court having the opportunity to assess witness credibility and demeanor has been repeatedly recognized. "A reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the [family] court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Mindful of these principles, we consider Mother's arguments.

On appeal, Mother asserts five assignments of error. First, Mother alleges that the family court erred by finding that Father met his burden to show a substantial change in circumstances before modifying the existing parenting plan.[5] In support, Mother states that there is no evidence in the record of a substantial change that was unknown, unanticipated, or that arose after the entry of the 2020 Order. We disagree.

Upon review, the record is replete with evidence considered by the family court concerning material changes in circumstance involving the parties since the entry of the

---

[5] West Virginia Code § 48-9-401(a) (2022) provides that:

[A] court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

Under this statute, the party seeking to modify the parenting plan must establish three criteria: (1) that the facts relevant to the alleged change in circumstance were not known or anticipated, (2) that the change regarding the child or one or both of the parents was substantial, and (3) that a modification of the plan is necessary in order to serve the best interests of the child. *See Jared M. v. Molly A.*, 246 W. Va. 556, 561, 874 S.E.2d 358, 363 (2022).

2020 Order, including Father's briefing and testimony that he had refrained from exercising parenting time starting in February 2022 because of his substance abuse problems, difficulty meeting his daily responsibilities, and his lack of stable housing. Mother testified similarly and asserted that Father stopped asking to see their minor child in 2022 because of his involvement with drugs. Father acknowledged that his problems were of his own making, but that he stayed away in order to protect the child from seeing him under the influence of drugs. Father also testified regarding his efforts to turn his life around, including his substance abuse recovery and his consistent employment at three different jobs so that he could meet his child support obligations and other financial responsibilities. Moreover, prior to the entry of the order on appeal, Mother was granted permission to relocate with S.K. to Moundsville, approximately 150 miles away. Accordingly, we cannot conclude that the family court's finding of a substantial change in circumstances was clearly wrong or its application of the law to this issue was an abuse of discretion. Based on the evidence before it, the family court was within its authority to modify the parenting plan from the 2020 Order upon its finding of a substantial change in circumstances. Moreover, we note that the modification, which begins with counseling and supervised visitation and gradually transitions to three hours of unsupervised time per week, actually decreases Father's parenting time compared to the 2020 Order it modifies.

Next, Mother contends that the family court erred in finding that modification of the parenting plan was in the best interests of the child, despite evidence that Father had been absent from the child's life for an extended period. Mother alleges that the court's reunification plan created a substantial risk of emotional distress to S.K. and that the family court did not sufficiently weigh the recommendation to alter the reunification schedule from the child's counselor. Mother claims the court erred in failing to permit the counselor to testify regarding her recommendation as supplied in support of Mother's motions for emergency relief, which the court denied. We find no merit in these arguments.

As a threshold matter, the family court's June 10, 2025, order ruling on Mother's motions for emergency relief is not properly before this Court on appeal. Moreover, Mother cites nothing in the record before this Court to suggest that she filed a petition to modify the temporary parenting plan on the basis of the counselor's June 1, 2025, recommendation or sought to introduce expert testimony through the pleadings directly relevant to the order on appeal. Accordingly, we decline to consider Mother's arguments related to the court's alleged failure to adequately consider the counselor's recommendation or permit her to testify.

In her third assignment of error, Mother alleges that the family court failed to give proper weight to her abandonment claim and erroneously disregarded the presumption of abandonment under West Virginia Code § 48-22-306 because it was not an adoption matter. Mother argues that Father met the criteria of abandonment because he failed to financially support and communicate with S.K. for six months even though he knew where the child lived, was physically and financially able to do so, and was not prevented from

doing so by others. Accordingly, Mother says the court should have found that Father relinquished his parental rights and then denied his modification. Again, we disagree.

West Virginia Code § 48-22-306 provides:

(a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
   (1) Fails to financially support the child within the means of the birth parent; *and*
   (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months *immediately preceding the filing of the adoption petition.*

(emphasis added). Here, the family court found this code section inapplicable because an adoption petition was not pending, a conclusion which is supported by the plain language of subparagraph (2). Even if that were not the case, it is undisputed by the parties that Father became current on his child support payments in 2023 and continued to timely make such payments through the pendency of this matter in the lower court, thus arguing against a finding of abandonment under the plain language of subparagraph (1). Accordingly, we find no merit in this assignment of error.

Next, Mother submits that the court erred by ordering Mother to travel from Moundsville to Charleston for counseling and Father's parenting time because it placed an undue hardship on Mother and indirectly burdened S.K. In support of this assignment of error, Mother mostly restates her prior arguments regarding her opinion that reunification with Father presents a substantial risk of harm to S.K. in light of his absence from the child's life. Importantly, Mother does not cite any evidence presented below concerning any alleged hardship and fails to elaborate on this contention.[6] Instead, Mother cites West Virginia Code § 48-9-403(d)(6) (2021), which provides that the "court shall attempt to minimize impairment to a parent-child relationship caused by a parent's relocation through alternative arrangements for the exercise of custodial responsibility appropriate to the parents' resources and circumstances and the developmental level of the child."

---

[6] *See William M. v. W. Va. Bureau of Child Support Enf't.*, No. 20-0620, 2021 WL 3833867, at *3 (W. Va. Aug. 27, 2021) (memorandum decision) (finding alleged error by family court harmless where petitioners failed to show they suffered prejudice or had their substantial rights adversely affected by alleged error).

Upon review, we cannot conclude the family court erred in its discretionary authority as it applied these statutory considerations to Mother's relocation. The court granted Mother permission to relocate from Charleston to Moundsville after it entered its May 23, 2025, order setting forth the modified parenting plan designed to reacquaint Father and S.K., and that permission was explicitly conditioned on Mother's ability to accommodate the counseling and parenting plan. Father was also responsible for traveling to Charleston for these appointments, having testified that he resided in Huntington in Cabell County. Given Mother's voluntary relocation in July 2025, the distance of the parties, and the fact that the reunification schedule was ordered to begin in May 2025, we find no abuse of discretion in the family court's requirement that Mother be responsible for S.K.'s travel to Charleston for Father's parenting time and counseling appointments.

Finally, Mother claims the family court erred in accepting Father's testimony regarding his substance abuse recovery without corroborating evidence. In support, Mother cites West Virginia Code § 49-4-604 (2020)[7], a statutory provision governing procedures in cases of child neglect or abuse, for the supposed proposition that parents must produce evidence they have responded to and benefited from substance abuse treatment such that it would reduce the risks to their children. Mother argues that the court erred by not imposing the "evidentiary safeguards" of the abuse and neglect statutory framework to this issue. We find no merit in this argument.

Although Mother alludes broadly to West Virginia Code § 49-4-604, she offers no analysis of the text or any interpreting case law to bolster her claim that the statute "makes clear that participation in treatment alone is insufficient" or that "parents must demonstrate that they have responded to and benefited from treatment in a manner that improves their ability to safely parent." Mother provides no analysis or support for her contention that any part of the statutory scheme addressing disposition of children whose parents have been adjudicated as abusive or neglectful is applicable to the case sub judice.[8] Accordingly, we disregard this skeletal argument. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (Holding that issues "mentioned only in passing but are not supported with pertinent authority are not considered on appeal").

At the heart of the remaining argument, Mother asks this Court to reweigh the evidence and rule in her favor. We decline to do so. As applied to witness testimony, we are bound to the credibility determinations of the lower court. "It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not

---

[7] West Virginia Code § 49-4-604 was amended effective 2026, after the events relevant to this appeal.

[8] This Court does not have jurisdiction to hear abuse and neglect matters. *See* W. Va. Code § 51-11-4(d)(3) (2026).

disturb those determinations." *Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). More broadly, this Court cannot set aside a family court's factual finding "unless clearly erroneous. A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Appellate courts must affirm a finding if the lower court's account of the evidence is plausible in light of the totality of the record. *Id.*

Here, Mother does not meet her burden for establishing clear error. The family court evaluated Father's testimony and evidence regarding his rehabilitation and efforts at self-improvement, including consistently working three jobs and staying current on his child support obligations for approximately two years prior to the filing of his petition for modification. The modified plan provided for a gradual reunification process between Father and S.K. with court-ordered counseling and supervised parenting time, all of which demonstrate the court's consideration of the best interests of the child. Accordingly, we cannot provide Mother the relief she requests.

Based on the foregoing, we conclude that Mother has not established error by the family court, and we find no reason to disturb the family court's decision. Accordingly, we affirm its July 30, 2025, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge S. Ryan White

Chief Judge Daniel W. Greear, not participating

10